UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN EGAN,

                    Plaintiff,

    -against-

LOCAL 363, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS'
UNION,

                    Defendant.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/22/2021__

18-cv-4656 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff John Egan ("Plaintiff"), commenced this action on or about May 25, 2018,
against Local 363, International Brotherhood of Electrical Workers' Union ("Local 363" or
"Defendant"), alleging violations of the Americans with Disabilities Act of 1990, as amended in
2008 ("ADA"); and the New York Human Rights Law (NYHRL). On May 21, 2020, Defendant
filed a motion for summary judgment. For the following reasons, the motion for summary
judgment is GRANTED.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements of facts and are
undisputed, unless otherwise indicated.

Defendant is a labor organization that represents approximately 2,600 members who
work as residential and commercial electricians and telecommunications workers installing and
maintaining telephone, computer network, internet, and fiber optic systems. (ECF No. 32-1 ¶ 5;

ECF No. 41 ¶ 5.)[1] Plaintiff was a member of Local 363 from 1987 through February 1, 2017, when he retired. (ECF No. 32-1 ¶ 2; ECF No. 41 ¶ 2.)

Defendant is a party to and bound by a Collective Bargaining Agreement ("CBA"), which governs rates of pay and working conditions. (ECF No. 32-1 ¶ 9; ECF No. 41 ¶ 9.) Pursuant to the CBA, Defendant maintains a job referral system through which members can be referred to employers for work as journeyman electricians ("journeymen"). (ECF No. 32-1 ¶ 13; ECF No. 41 ¶ 13.) Members who are seeking work can sign a list and they will be added to the referral system. (ECF No. 32-1 ¶ 16; ECF No. 41 ¶ 16.)

Pursuant to the CBA, "[o]n any job where there are two (2) journeymen, one shall be designated as Foreman" and "[f]or every ten (10) Journeyman Wireman working on a job, there shall be a Foreman." (ECF No. 41 at ¶ 23-24.) Also pursuant to the CBA, all journeymen must provide themselves with a list of required tools that weighs more than 10 lbs. (ECF No. 41 ¶ 26.) The CBA also describes some duties of journeymen: "The handling, setting, installation, distribution and erection and connection of all electrical apparatus, materials or equipment. This shall include the loading and unloading of material, tools and equipment from the nearest point of delivery to the job. At all times Foreman and General Foreman are permitted to move material, tools, and equipment to, from and within the job site." (ECF No. 41 ¶ 28; ECF No. 32-1 ¶ 28.)

Generally speaking, Defendant refers members for work in order of their place on the referral list. Under the CBA, an exception to this ordering occurs when an employer requests journeymen with special skills and abilities. (ECF No. 32-1 ¶ 17; ECF No. 41 ¶ 17.) Defendant's

---

[1] In his Rule 56.1 statement of facts, Plaintiff specifically denied or admitted some of Defendant's statements of fact, but failed to respond to others altogether. The Court deems those that Plaintiff failed to respond to admitted.

computer system maintains a list of computer codes for special skills and abilities and selects individuals with the requisite skills from the list in order of their place on the list. (ECF No. 32-1 ¶ 17; ECF No. 41 ¶ 17.) Under the CBA, foreperson is not considered a special skill or ability. (ECF No. 32-1 ¶ 19; ECF No. 41 ¶ 19.) Under the CBA, the employer and not Defendant is responsible for planning, directing, and controlling the operation of work, as well as "determining the need and number as well as the person who will act as foreman." (ECF No. 32-1 ¶ 10-12; ECF No. 41 ¶ 10-12.)[2]

On or about January 22, 2015, Plaintiff sustained a serious rib injury. On January 26, 2015, Plaintiff's physician provided Defendant with a note indicating Plaintiff was unable to work until further notice. (ECF No. 32-1 ¶ 79; ECF No. 41 ¶ 79.) Between January 22, 2015 and February 2, 2015, Plaintiff was "100%" disabled and unable to perform any work whatsoever. (ECF No. 32-1 ¶ 80; ECF No. 41 ¶ 80.) On February 9, 2015, Defendant referred Plaintiff for work as a journeyman and Plaintiff reported to a job site. Plaintiff determined he was unable to perform the work and went home. (ECF No. 32-1 ¶ 81; ECF No. 41 ¶ 81.) Between February 17, 2015 and March 4, 2015, Plaintiff was again "100% disabled" due to the injury and unable to perform any work whatsoever. (ECF No. 32-1 ¶ 85; ECF No. 41 ¶ 85.) Plaintiff's physician sent Defendant a note on April 21, 2015 indicating Plaintiff was "100% temp. disability, out of work, will re-eval in 1 month for return to possible light/full duty." (ECF No. 32-1 ¶ 87; ECF No. 41 ¶ 87.)

Plaintiff alleges that on or about May 19, 2015, June 10, 2015, and September 28, 2015, he attempted to provide Defendant with new notes from his physician indicating that Plaintiff was now "75% disabled" and could work on "light ambulatory duty," but was restricted from

---

[2] Plaintiff partially denies many of the assertions in this paragraph. However, his denials are based on the actual implementation of the CBA's provisions and not on the provisions themselves. (ECF No. 32-1 ¶ 15, 16, 19.)

lifting more than ten pounds, but Defendant's representative refused to accept the notes because Plaintiff needed to be "100% healthy" in order to resume work. (ECF No. 32-1 ¶ 57.) Plaintiff also alleges that he attempted to sign Defendant's referral book at least once during this time period, but was prevented from doing so. (*Id*.)

Plaintiff alleges that Defendant improperly prevented him from being on Defendant's job referral list and thus prevented him from securing employment as a Foreman. Plaintiff also alleges that in January 2017, he submitted his retirement papers because Defendant prevented him from securing employment. After submitting his papers, Plaintiff alleges that he spoke with Defendant's employee and indicated that he was physically capable of working in a vacant "lock-up pup" position, but Defendant's employee responded "it is what it is." (ECF No. 31-17 at 32.)

On June 2, 2016, Plaintiff filed a Chapter 7 Bankruptcy Petition in the Southern District of New York. (ECF No. 32-1 ¶ 45; ECF No. 41 ¶ 45.) In support of Plaintiff's Bankruptcy Petition, Plaintiff filed Form 106A/B, listing his assets. (ECF No. 32-1 ¶ 46; ECF No. 41 ¶ 46.) Plaintiff represented that he had no "claims against third parties," including claims he had not yet filed, nor made demands for payment (inclusive of employment disputes and rights to sue.) (*Id*.) Plaintiff received a discharge pursuant to his 2016 Bankruptcy Petition on September 15, 2016. (ECF No. 32-1 ¶ 47; ECF No. 41 ¶ 47.) Plaintiff believes his 2016 Bankruptcy was directly caused by Local 363's alleged discriminatory actions against him. (ECF No. 32-1 ¶ 48; ECF No. 41 ¶ 48.)

Although Plaintiff alleges that he was able to work as foreman for most of the time period following his injury, Plaintiff nonetheless represented to Workers' Compensation and the Social Security Administration that he was fully disabled and unable to work. From 2015 to 2017, as a

result of his application for disability benefits from the IBEW Local 363 Welfare Fund, Plaintiff received stipend payments totaling $50,104.00, as well as full credit for 1200 hours worked each year from 2015 to 2017 toward his pension, and health insurance. (ECF No. 41 ¶ 77-78; ECF No. 32-1 ¶ 77-78.) Since 2015, Plaintiff has applied for and received Social Security/Disability benefits in the amount of $1,213.00 each month, as well as Worker's Compensation payments in the amount of $2,700.00 each month, based upon his representation that he is unable to work. (*Id.*)

On April 22, 2020, Defendant moved for summary judgment. (ECF No. 31.)

### STANDARD ON A MOTION FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing ... that [the] adverse party cannot produce admissible evidence [in] support" of such a contention. Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; accord *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light most

favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence ... of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Similarly, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (citing *Perma Rsch. and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (such affidavits "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact")). But the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not automatically render them insufficient to defeat summary judgment. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Instead, summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," where "that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249.

Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id*. at 250.

## DISCUSSION

Defendant moves for summary judgment on the grounds that (1) Plaintiff lacks standing, (2) Plaintiff's claims are untimely, (3) Plaintiff has presented insufficient evidence of disparate impact discrimination as a matter of law, (4) Plaintiff fails to establish the elements of a *prima facie* discrimination claim, (5) Plaintiff has not produced evidence that Defendant violated the duty of fair representation, (6) Plaintiff's state claims are preempted by federal labor law, and (7) Plaintiff's state law claims are improperly plead. For the following reasons, the Court finds that Plaintiff's claims should be dismissed.

## I.      Standing

### A.      Law

"The issue of standing is a threshold jurisdictional issue, which a federal court must entertain before reaching the merits of the case." *Isnady v. Vill. of Walden*, 2019 WL 3252753, at *5 (S.D.N.Y. July 19, 2019), aff'd, 799 F. App'x 91 (2d Cir. 2020) (citing *Ross ex rel. Dunham v. Lantz*, 408 F.3d at 123 (2d Cir. 2005) (per curiam)).

When a debtor files for bankruptcy, an estate is created that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Pursuant to 11 U.S.C. § 521(1), the debtor is required to disclose all of his actual and potential assets in a schedule of assets and a statement of financial affairs which would include any of his causes of action." *Kassner v. 2nd Ave. Delicatessen Inc.*, 2005 WL 1018187, at *3 (S.D.N.Y. Apr. 29, 2005). *See also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d

473, 484 (2d Cir. 2014) ("[I]t is established that [interests belonging to the estate] include causes of action possessed by the debtor at the time of filing.").

Property that is disclosed pursuant to § 521(1) and is not otherwise administered at the close of the bankruptcy case may revert to the debtor. *Kassner*, 2005 WL 1018187, at *3. "Undisclosed, unscheduled assets, however, 'automatically remain property of the estate after the case is closed.'" *Goldson v. Kral, Clerkin, Redmond, Ryan, Perry & Van Etten, LLP*, 2014 WL 4061157, at *4 (S.D.N.Y. July 11, 2014), report and recommendation adopted, No. 13 CIV. 2747 GBD FM, 2014 WL 3974584 (S.D.N.Y. Aug. 13, 2014) (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir.2008)). "Since the bankruptcy estate retains any unscheduled assets, only the trustee has authority to control such assets, and hence the debtor loses all rights to pursue an undisclosed cause of action in his own name." *Kassner*, 2005 WL 1018187, at *3; *see also Isnady*, 2019 WL 3252753, at *5. "The courts are in agreement that creditors, trustees and debtors in possession may pursue undisclosed claims following confirmation of a plan of reorganization by methods that ensure that the creditors receive the benefit of any recovery." *Rosenshein v. Kleban*, 918 F. Supp. 98, 103 (S.D.N.Y. 1996).

   *B.     Application*

Defendant argues that because Plaintiff's claim existed before Plaintiff's 2016 Bankruptcy Petition and Plaintiff failed to disclose the claim, Plaintiff no longer retains the right to bring this action in his own name. (ECF No. 36 at 6-8.) Plaintiff failed to respond to this argument at all. (ECF No. 32.) Defendant is correct.

As a threshold matter, Plaintiff's failure to address standing after Defendant clearly raised the issue constitutes an abandonment of his claims. *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the

argument in any way."); *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").  Accordingly, his claims are properly dismissed as abandoned.

Even if the Court were the reach the merits of Defendant's argument it would conclude that Plaintiff lacks standing to assert his claims.  The claims Plaintiff asserts rightfully belong to the bankruptcy estate because they accrued before he filed his bankruptcy petition. Although Plaintiff did not pursue these claims until after his bankruptcy case closed and Plaintiff claims ongoing discrimination, he has failed to "allege any specific discriminatory conduct, committed by defendants against [Plaintiff], which arose after he filed his bankruptcy petition." *Kassner*, 2005 WL 1018187, at *3.  Instead, the only specific conduct he alleges to have occurred after the filing of the petition is Defendant's rejection of his "last-ditch" request to work in a vacant "lock-up pup" position after he filed his retirement papers. This alleged denial is not new conduct arising after Plaintiff filed the 2016 Bankruptcy Petition, but rather a continuing application of Defendant's ongoing position that Plaintiff is not physically able to perform Journeyman work and is insufficient to establish standing. *See, e.g.*, *id.* ("Simply because [Plaintiff] contends that the alleged discriminatory conduct is of an ongoing nature, and hence involves post-bankruptcy wrongdoing, does not, standing alone, provide him with the requisite standing."). Furthermore,

as detailed below, Plaintiff's own testimony regarding the alleged "lock-up pup" incident does not sufficiently state a *prima facie* claim.[3]

## II.     Merits of Plaintiff's Claims

Even if Plaintiff's claims were not properly dismissed due to a lack of standing and abandonment, Plaintiffs discrimination claims would nevertheless fail on the merits.

### A.     Law

Plaintiff's claims for disability discrimination under the ADA and NYSHRL are both analyzed under the McDonnell-Douglas burden-shifting framework. See *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000) (ADA and NYSHRL claims); *Stone v. City of Mount Vernon*, 118 F.3d 92, 96–97 (2d Cir. 1997) (ADA claim); *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (ADA and NYSHRL claims); *Krasner v. City of New York*, 580 F. App'x 1, 2–3 (2d Cir. 2014) (ADA and NYSHRL claims). To establish a prima facie case of discrimination under a failure to accommodate theory, a plaintiff must show, by a preponderance of the evidence, that: (1) his or her employer is subject to the applicable law; (2) he or she suffers from a disability within the meaning of the applicable law; (3) he or she was qualified and able to perform the essential functions of his job with or without reasonable accommodation; and (4) his or her employer failed to make such reasonable accommodations. *Stone*, 118 F.3d at 96–97; *McMillan*, 711 F.3d at 125.

The burden then shifts to the defendant "to demonstrate that the employee's proposed accommodation would have resulted in undue hardship," *Parker*, 204 F.3d at 332. *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (wrongful discharge theory). If

---

[3] This incident allegedly occurred *after* Plaintiff quit his job and is described as Plaintiff telling Defendant's employee, "I didn't want to retire. I could have been put out as a lock-up pup," and Defendant's employee responding "it is what it is." (ECF No. 31-17 at 32.) Even if the Court were to accept Plaintiff's deposition as true, Plaintiff didn't actually ask Defendant if he could work in a "lock-up pup" position; instead, Plaintiff merely indicating, *after submitting retirement papers*, that he could have been put in a lock-up pup position.

the defendant satisfies this burden, then plaintiff will be required to prove that the proffered

reason is pretextual, *i.e.*, that the defendant acted with discriminatory motivation. *Corp. v. Green.*

*Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).

To establish a prima facie case of discrimination under a disparate impact theory, plaintiff

must show "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly

adverse or disproportionate impact on persons of a particular type produced by the defendant's

facially neutral acts or practices." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d

Cir. 2003) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35,

52-53 (2d Cir. 2002)). The use of statistics or some other analytical mechanism is required to

determine disproportionate impact. *Id*. at 576.

B.       *Application- Reasonable Accommodation Claim*

1.       <u>Prima Facie Case</u>

Both parties agree that Defendant is subject to the ADA and NYSHRL and that Plaintiff

suffers from a disability within the meaning of the ADA and NYSHRL. However, the parties

dispute whether Plaintiff was able to perform the essential functions of his job with or without

reasonable accommodations and whether Defendant failed to make reasonable accommodations.

As discussed below, the Court concludes that, although there is a genuine dispute of material fact

as to whether Plaintiff was physically able to perform the essential duties of the foreman role,

Plaintiff nonetheless failed to give Defendant adequate notice of his desire to obtain an

accommodation to serve as a foreman, and therefore summary judgment is warranted.

**<u>Plaintiff's Ability to Perform Essential Functions of the Job</u>**

Essential functions constitute "'fundamental' duties to be performed in the position in

question, but not functions that are merely 'marginal.'" *Stone v. City of Mount Vernon*, 118 F.3d

92, 97 (2d Cir. 1997) (quoting 29 C.F.R. § 1630.2(n)(1) (1996)). A job function may be essential

for a number of reasons, including that "the reason the position exists is to perform that function," the function is "highly specialized," or only a limited number of employees can perform the function. *Stone*, 118 F.3d at 97. Courts must conduct a "fact-specific inquiry" to determine whether job duties are essential in nature. *McMillan v. City of New York*, 711 F.3d 120, 126 (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140 (2d Cir. 1995)). Factors to consider include: "(i) [t]he employer's judgment as to which functions are essential; (ii) [w]ritten job descriptions ...; (iii) [t]he amount of time spent on the job performing the function; (iv) [t]he consequences of not requiring the incumbent to perform the function; (v) [t]he terms of a collective bargaining agreement; (vi) [t]he work experience of past incumbents in the job; and/or (vii) [t]he current work experience of incumbents in similar jobs." *Stone*, 118 F.3d at 97 (citing 29 C.F.R. § 1630.2(n)). Courts "give considerable deference to an employer's determination as to what functions [of a job] are essential ...." *McMillian*, 711 F.3d at 126.

Both parties agree that, under the CBA, foremen are designated from a pool of journeymen by the employer. Thus, the only way for Plaintiff to secure work as a foreman under Defendant's existing system is to sign the list for work as a journeyman. Plaintiff avers that this process is discriminatory because the journeyman job is more physically taxing than the foreman position. Both parties agree that the journeyman position requires lifting heavy weights and that Plaintiff, due to his disability, is unable to meet the physical requirements of the journeyman position.

Nonetheless, Plaintiff avers he is able to perform the essential functions of the foreman position. Both parties agree that the foreman role includes supervisory and management duties, which are not expected as part of the typical journeyman role. (ECF No. 32 at 18.) Plaintiff argues that although foremen may occasionally need to perform physical work, in the rare

instances that physical work is required, a journeyman can assist the foreman. Plaintiff specifically identifies large jobs, where foremen are responsible for managing 10-15 journeymen, as jobs where physical work would be a small portion of the foreman position because the foreman would be spending substantial time managing and supervising. Plaintiff supports his argument with his own testimony regarding his limited experiences of having worked as a foreman in a handful of occasions and his experiences having worked as journeyman and observed the work of a foreman.

The record overwhelming favors Defendant. The CBA clearly indicates that foremen are designated from journeymen *by the employer* if there are two or more Journeymen on a given job. The CBA does not indicate that by virtue of being designated foreman, an individual is no longer required to complete his or her journeyman duties. Journeymen, and foremen by extension, are required to provide their own set of tools which weigh more than ten pounds, an amount that Plaintiff admits he cannot carry. Further, both parties acknowledge that a foreman has a duty to demonstrate proper technique and assist journeymen. While Plaintiff's testimony stems from his limited experience as a foreman, NECA Executive Director Jeffrey Seidel, who has forty years of experience as a contractor and has appeared on thousands of jobsites covered by the CBA, declared that the foreperson position requires individuals to be able to move more than ten pounds. (ECF No. 31-1.) Further, both parties agree that foremen are the first to arrive on the job and the last to leave and therefore have responsibility to handle tasks alone. Nonetheless, the Court must view the record in the light most favorable to the non-moving party—Plaintiff—and in doing so, believes that there is a genuine dispute of material fact as to whether Plaintiff was physically able to perform the essential duties of the foreman role, especially the foreman role for large jobs.

**Defendant's Failure to Make Reasonable Accommodations**

"[G]enerally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir.2006) (emphasis added) (internal quotation marks omitted). "Application of this general rule [that a request for accommodation is a prerequisite to liability for failure to accommodate] is not warranted, however, where the disability is obvious or otherwise known to the employer without notice from the employee." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (internal citations omitted) (deviating from the general rule where plaintiff's cerebral palsy was obvious and it should have been known to the employer that a reasonable accommodation was warranted). The Second Circuit has found that in such circumstances, the ADA contemplates that employers will engage in an "interactive process" to determine whether and how to reasonably accommodate an employee's disability. *Id.* (citing *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir.2000).)

In the complaint, Plaintiff argues that Defendant failed to make reasonable accommodations in that Defendant failed to maintain a separate list for the referral of foremen and/or specialized computer codes to denote the foreman skillset. It is undisputed that Plaintiff did not, at any time, request this accommodation. In fact, the record reveals that Plaintiff never even alluded to the fact that he was interested in performing the foreman role. Plaintiff merely avers that he requested to sign the referral list—which is used to refer journeymen, some of whom are later designated as foremen—at least once and attempted to provide Defendant with medical notes indicating he was "75% disabled." Plaintiff further admits that he was incapable of performing the essential duties of the journeyman role at all relevant times. In fact, following Plaintiff's injury, Defendant referred Plaintiff for work as a journeyman and Plaintiff was unable

to complete the job. Evening viewing the record in the light most favorable to Plaintiff,

Defendant was at most aware that Plaintiff was seeking to work as a journeyman yet was

disabled to the point where he could not perform the role with or without reasonable

accommodations. Therefore, the Court finds that Plaintiff's interactions with Defendant were

insufficient to give Defendant notice of Plaintiff's desire to obtain an accommodation to serve as

a foreman.[4] As such, Defendant's motion for summary judgment as to Plaintiff's failure to

accommodation claims is granted.

C.    *Application – Disparate Impact Claim*

Plaintiff challenges Defendant's facially neutral policy which requires that all

journeymen sign the work list to be eligible to serve as a foreman.[5] Plaintiff avers that this policy

disadvantages himself and other qualified disabled foreman.

To prevail on his claim, however, Plaintiff must do more than merely speculate about the

existence of a disparate impact. In sum, Plaintiff speculates that a single unnamed individual was

also affected by this policy.  However, this speculation is hardly enough to survive a motion to

dismiss because he also concedes that he does not know that individual's physical condition,

qualifications, or availability for work. (ECF No. 40-1 at 123-124.)

---

[4] In his opposition brief, Plaintiff further argues that Defendant also failed to provide reasonable
accommodations by not considering Plaintiff for a "lock-up pup" position. Defendant argues that Plaintiff failed to
make this claim earlier in the litigation and that it therefore cannot be entertained now. Regardless, Plaintiff's "lock-
up pup" position claims fail on the merits. Plaintiff never actually asked Defendant if he could be considered for a
"lock-up pup" position. Instead, Plaintiff merely remarked, *after submitting his retirement papers*, that he would be
capable of performing the "lock-up pup" position and Defendant's representative responded "it is what it is."
[5] Plaintiff also challenges Defendant's purported application of a "100% healthy policy," which precludes
individuals from returning to work unless they are "100% healthy," as a *per se* violation. To support this argument,
Plaintiff alleges that when he attempted to sign the referral list, he was told he had to be "100% healthy" and that
when retired, he was told "it is what it is." However, Defendant indicates that it maintains no such formal policy and
its representatives testified that no health screening was imposed on individuals seeking to sign the referral list.
Plaintiff also admitted himself that many union members worked with injuries or disabilities with the assistance of
co-workers. Even viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has failed to
offer evidence of a "100% healthy policy."

As such, Plaintiff fails to meet his *prima facie* burden and the summary judgment is properly granted in favor of Defendant.

## CONCLUSION

For the foregoing reasons,[6] Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is directed to terminate the motion at ECF No. 35, issue judgment in favor of Defendants, and terminate the case.

Dated:    March 22, 2021                SO ORDERED:

White Plains, New York

_____

NELSON S. ROMÁN

United States District Judge

---

[6] Because Plaintiff's claims are both dismissed due to a lack of standing and on the merits of the claims themselves, the Court declines to address Defendant's various other arguments.

16